Our third case is 23-6245, United States v. Dimkpa. Ms. Westover. Good morning, Your Honors. May it please the Court, my name is Blair Westover and I represent the petitioner, Mr. Dimkpa. I guess, as I view it, this case presents a fairly narrow question to the Court, whether or not Ruhan v. United States constitutes a sufficiently novel Supreme Court case to forgive my client's procedural default when he failed to challenge his guilty plea on direct appeal. The test, I understand that, you know, just because I think everyone acknowledges it would have been beyond futile for him to have challenged his guilty plea at the time that it was taken in 2019 under this Court's case law. But I understand that futility and novelty are two different things. An argument can be futile and still be available. The test, however, there are cases where a Supreme Court case is sufficiently novel that it does justify finding cause to excuse procedural default. So there are three situations, where the Supreme Court explicitly overturns a prior precedent, where the Supreme Court overturns long-standing widespread practice to which the Court has not directly spoken, but which enjoys a near-unanimous body of lower court authority. Which of those three do you think is a winner? I'm going to try all of them. Which one is your strongest side? I think it's probably three. That first one is kind of difficult, isn't it? Well, here's my pitch. Before Ruhan, the decision was Moore, United States versus Moore. And I understand the government quotes Ruhan as saying Moore did not speak directly to the mens rea question. That's true. That is what it says. That quote is an accurate quote from the case. However, that was not the view of this Court prior to Ruhan, nor was it the view of the majority of this Court's sister circuits prior to Ruhan. In Allaire, in Hurwitz, in Trong-Trong, this Court said, you know, this is an objective standard, and we're basing that on Moore. Right? And if you look at the footnote in Moore, there's a good faith instruction that was given by the district court. And that good faith instruction looks a lot like the good faith instructions that were routinely upheld by this Court and the majority of this Court's sister circuits prior to Ruhan. So I think there is a sense in which Ruhan did overturn Moore. And it certainly overturned Moore in the way it ruled. Because Moore, you know, prior to Moore, so I will agree the central holding of Moore was that the CSA, the Controlled Substance Abuse Act, doesn't explicitly say, you know, this is the definition of medical practice and this is how practitioners are limited. So what Moore did is it incorporated the standard from the Harrison Act, which was the CSA's precursor as it applies to medical practitioners. That was all good faith. Good faith defined a doctor's viability. Ruhan, sorry, tossed out good faith entirely. Right? It's like, we're not doing good faith anymore. We're basing this, we're saying knowledge of lack of authorization. Right? So under Ruhan, you have to establish, the government has to establish, the defendant knew that the prescription in this case he issued was unauthorized. I think that was a surprise. I think that was a novel decision. I think that the petitioners in that case going up were asking for a subjective good faith instruction. They weren't asking for that type of almost specific intent sort of standard that Ruhan got. In terms of the lower court decisions, the standard is near universal, not universal. I think that every circuit save the 7th and the 9th, and including this one, had an objective good faith standard. And again, it was always a good faith standard, an objective good faith standard. Even the 7th and the 9th had an objective good faith standard. Let me ask you another question, just preliminarily. Your client is currently on supervised release? Yes, I believe so. He's still on supervised release? How come? I feel like the years don't work out right. I'm going to be real honest. I haven't checked recently. I would have to look at it. If not, there are collateral consequences for him. Giving up his medical license was partitioned on the plea. I should have checked that, and I apologize. Can I ask you a question? Is it your position that if a case falls within one of those three REIT categories, that's the end of the inquiry? I think it should be. But is it? Right. I guess that probably brings me to the government's main point, and I can't deny this as a factual matter, if only because I was one of the people doing it. People were making this argument, right? Well, no one was really arguing what Ruhan held, so I think that is different. But people were arguing the good faith instruction should be subjective. And not only that, but I guess the data point that seems most significant to me in considering whether the legal basis for this claim was available would be the Raheif decision, which you know, Ruhan then goes on to say, look, we, Ruhan, we came right out of Raheif. Yeah. I mean, I think that's, I guess what I want, the way I want to distinguish that is that, like I was talking about the Harrison Act cases, the good faith definition of medical practitioner was very ingrained. Like, centuries, it's not overturning like decades-long case law, it's overturning centuries-long case law that relied on good faith to define what medical practitioner is, what's the difference between a guilty and a not guilty medical practitioner, right? You know, yes, I don't think it should be enough that just because there is some foundational constitutional principle that the court has recognized that any conceivable argument you make by that, or any conceivable way that they apply that is definitionally not novel. You know, due process, well, yeah, but it's how it's applied, right? So I guess that's how I would say that Raheif doesn't necessarily make this a non-novel argument, or make Ruhan a non-novel decision. This might sort of circle back to your argument about Moore. I mean, the Supreme Court says in Ruhan, we are building directly on what we said in Raheif. Like, how much, you know, just the way they say also, and we're not overruling Moore. I'm trying to think about kind of what I've been recently reminded is the hierarchical nature of my relationship with the Supreme Court, and I'm trying to figure out how much am I bound by the way the Supreme Court sort of characterizes what it's doing in Ruhan. You know, I don't know that I'm going to have a good answer to that question. In this case, I want to say, oh, don't worry about it. My position is not at all. But, you know, I understand that the petitions in Ruhan cited Raheif, right? It's not like that was ignored. But I do think it was more of, they're citing it for a very general principle. And the way it was cited, I can tell you, was we have to do something with these objective good faith instructions, because the good faith instructions without a subjective element, you know, don't distinguish culpable from non-culpable conduct. We didn't use that to say, at least as it was argued, it wasn't to say, we need to attach a knowledge mens rea to the fact of authorization, right? And I think, you know, the Supreme Court took it that way, but I don't think that was the argument, if that makes sense. I have one minute left before my rebuttal time. I was, it's my view that the government didn't actually contest the district court's finding on prejudice. I think the district court's finding on that was, well, it was murky. They said it was murky. I don't know if murky is a challenge. But I did want to say that if you read the sentencing transcript and the supplemental appendix, I think it's pretty obvious that everyone there was thinking about this in terms of a negligence or recklessness case. There's new or should have known. The, you know, the government said, I don't believe, the attorney for the government said, I don't want to hand out prescription pills to the victim. So I do think that there's ample, I think the district court was correct to find prejudice. And with that, I'm going to be into my rebuttal time, so unless there are any. Before you do, I want to be clear, at least in terms of the way I'm viewing this case, we talk about initially the three different methods, and you pointed to the third one. I know, I didn't get there. And you proceeded with the first and second, which, at least from our perspective, maybe you're moving me on those. But that third one seems to me have some teeth that we probably should address more. The question of whether Ruud disapproved of a practice that the Supreme Court arguably sanctioned in Moore. At least the Fourth Circuit thinks so, and at least Moore itself, there's language in there pretty strong on that. And I'm just giving you my perspective for you to comment, but not just to comment. You say you want to come back and come back on it. Because it seems this is the case we can go round and round about this explicit, but that's, I mean, we already know it's not explicit. It did not explicit overrule it. And you know, you can talk about it in different circuits, but these circuits have been all over the place on that second. It was fun to argue it, but it really is not to me. It doesn't get to the heart of the case. The heart of the case, from my perspective, is in this third one here. And I thought you were going to walk right down that line and said, let me show you how Moore made everybody go this way, and the Supreme Court went somewhere different than Moore, which is explicitly one of the third things here. It seems like to me it favors you. Right. I was trying to, I didn't bring it together enough, when I said that Moore is sanctioning this objective good faith language in the footnote. Even if you want to say that Rouhan doesn't directly overturn Moore, you know, Moore lays out the test, Moore cites to the CFR 1306.04, Moore approves of the instructions that are similar to this one, and then the courts follow along with that, and based on that, you know, this court and the vast majority of other circuits says, yeah, Moore approves of this. And to that extent, that's why I think the third prong, the Ross sort of factors or circumstances apply. With that, I'd like to reserve the rest of the time. Thank you. Ms. Niemeyer. Good morning. May it please the court, Julie Niemeyer for the United States. This court should conclude that the scienter standard clarified in Rouhan is not sufficiently novel to serve as cause to excuse the petitioner's procedural default. That's true for two reasons. The first is that the very concept of scienter is inherent in the concept of authorization, and authorization has been litigated for decades in terms of the good faith defense and the lack of that defense and what is required to prove it. And secondly, a scienter standard was essentially foreshadowed by other precedents, including rehave, which did exist at the time of the petitioner's plea. Starting with the first argument, the concept of... Can I ask you a question about the read factors? I just want... I'm trying to figure out how the read factors fit in with your argument. Is your argument that it doesn't fall within one of the three read buckets, or is it that even if it does, you still have to add... Those are just illustrative categories where a rule might be novel, but you always have to ask, was the legal basis available? The government's position is that this case is not covered by any of the read categories. And I can explain, with particular attention to the third category that Judge Wynn highlighted, changes that... I think it's important, at least from my perspective, and Judge Harris' question is going right to it, because I think it's right. We look at these factors, and you can look at the first one, and yeah, you're going to argue... We know your argument on that. That's pretty clear. It doesn't explicitly say it. The question is, is there an implicit balance that gets it there? Difficult question to answer, the question of whether or not it's so pervasive in other circuits. Circuits have been all over the place for this thing, it looked like to me. But that third one looks like it could have some teeth, as I indicated. I mean, it says ruin disapproved of a practice that the Supreme Court arguably sanctioned in war. And if you read more, it looks like there's a lot of language in there that points to that they are seeing when they use language such as within accepted limits in the usual course of medical practice, and exceed the bounds of professional practice, and then the Fourth Circuit picks up this thing and leads it to implicitly approving the objective approach. And the Supreme Court comes with a subsequent case, looks to me like that fulfills disapproved of a practice that the Supreme Court arguably sanctioned in war. That's the direction I'm going in, and I'm giving it that. So again, this is one of those back-judge-win off of that misconception, because I have a different approach. Your Honor, let me address that directly. The instruction in Moore actually had two elements, and those are reflected in the modern day CFR definition of what is authorized. It is authorized if the prescription is for a legitimate medical purpose, and in the usual course of professional practice. Those two concepts were addressed in Moore in that instruction, because the instruction was that the physician did so other than in good faith for detoxification, which is a purpose for detoxification, in the usual course of a professional practice. So Moore could not be convicted under that instruction if he merely made an honest effort to prescribe for detoxification in compliance with existing standards. There was the legitimate medical purpose aspect to that, was it for detoxification in that case? And the more objective, was it in the course of professional practice? Those two elements were inherent in the Moore decision, and we know that because different circuits interpreted Moore differently. So after Moore, the Ninth Circuit eventually held, first in the Hayes case, and then in the Feingold case, that if a physician is acting outside of his authorization, by definition he must be acting intentionally, because if a practitioner deliberately acted outside the normal course of medical practice, there is inherently a scienter aspect to that. But if the question is whether it was arguably a physician that they did it, and you determined that the Fourth and the Fifth Circuit determined that Moore implicitly approved of an objective standard, doesn't that meet the arguably part? Even if you've got other circuits that go a different way on it, even if you can read it, and maybe textually or however, but if you've got two circuits that say this, sounds like to me that's an argument. Well Your Honor, I think it would be different if Moore had issued, and then there were some circuit decisions, and then there was another decision, possibly similar to Moore, building on Moore, that said very much the same thing, and that sanctioned those prior circuit decisions. But that's not what we have here. There was a plurality of different decisions by the different circuits, and there was not a Supreme Court decision subsequent to that that sanctioned those. You said plurality. I thought there was nearly unanimous agreement that the objective standard was the right test. Well Your Honor, there's two circuits, the Ninth and the Seventh, that have a clear scienter standard. I'll give you those, but all the others went the other way, right? Well Your Honor, I think there are a few differences in the different circuits in terms of how they define good faith. Good faith, like as I mentioned earlier, has two components to it. It has the purpose component and the course of medical practice component. And there's been a lot of litigation about whether the objective test applies to just that course of medical practice component or also the good intentions, the purpose component. And we saw that here very recently in the Smithers case where the defendant asked for an instruction that split that test, that is one sentence in the CFR, into two separate prongs, that the defendant acted without a legitimate medical purpose or outside of the usual course of medical practice. Making that a two pronged disjunctive proposed jury instruction, this court recognized that the defendant was trying to allow for a successful defense merely by one prong or the other prong. Perhaps the defendant acted with a legitimate medical purpose or the defendant acted within the usual course of medical practice, objectively. And so recognizing that that first prong, legitimate medical purpose, has an intent element to it. It's not an intent requirement of course, but it's in there. A purpose requirement, a legitimate medical purpose, has a scienter aspect to it. And so this court found that that was sufficient even to preserve the defendant's claim as to a mens rea argument, that that claim wasn't waived because the defendant on appeal had raised an allegation of error as to the jury instructions, the good faith jury instructions. And because they'd asked for that disjunctive wording, the court held that that preserved the argument as to a subjective mens rea. Counsel, what if, just assume for a minute, that I think we might be in box three and box two of the read categories, and it's probably related, right? Everybody thought more said this and that's why the circuits were more or less strong consensus, fought to follow more and what everybody thought more meant. I still, I don't think you've had a chance to come back to my first question, which was, how do the three read buckets relate to the actual standard in this case? Is it the government's position that even if this case falls within one of those three read categories, you still prevail? Or do you think the question is, is it in one of those three categories? And if it is, then it's novel. Your Honor, again, we would contend that this case doesn't fall into any of the three categories. But, if this court were to find that it did fall into one of the categories and it did provide sufficient cause, our position is that... No, no, no, I'm sorry, that's not my... So you are assuming that if it falls in one of the three read categories, it is novel, because I will just tell you that is not how I read read. I read read to be saying, the question in every case is, was the legal basis for this claim reasonably available? Here are three examples where the answer is, probably not, but not be positive. You always have to come back to the question. Agreed, Your Honor. Yes, absolutely. Yes. Even if there was an arguable case to be made for one of the categories in read, that would still need to be analyzed in terms of whether that claim was reasonably available to the petitioner at the time of his plea. And here, given the extensive case law, arguing about these very concepts, whether or not any of those claims were successful in our circuit or in various other circuits, it was reasonably available as an argument. And as Judge Harris pointed out, that really is the question here. Was it reasonably available to the defendant at the time of his plea? And we can see that just... I mean, even in recent cases, it has been raised in a number of cases, unsuccessfully, but it has been raised, and so it was reasonably available. So the takeaway here is that Scienter and the good faith instruction and the case law surrounding that, those are two sides of the same coin. And we've been debating that, of course, not in our circuit, since Hurwitz, it's been clear, but in other circuits and in litigation over the wording of those specific instructions. Those are two sides of the same debate. The same evidence is relevant to prove either one. And so we've been debating that for years. It was available to the petitioner. There was not a universal consensus. So moving forward from there, the cause element is not the only thing that the petitioner has to establish. The petitioner also has the burden of proving actual prejudice. Do you feel that you preserve that by describing the prejudice issue as murky in your brief? Your Honor, I do because it's the defendant's burden. And Frady makes clear that that burden falls squarely on the petitioner, on the defendant. If the defendant has not made the case for actual prejudice, that as a factual matter. It's just weird. I mean, if you mean the district court erred when it said there was prejudice, why doesn't the brief say that? Why does it say it's murky? I really didn't understand from the brief whether you were challenging this or not. The government really wanted to address this mostly on the cause argument. And I believe that that was the thrust of the district court's decision was based on the cause. With respect to actual prejudice, this court is doing a de novo review. This court can reach any conclusion that it finds supported by the record. And here the defendant hasn't met his burden of establishing that actual prejudice. And that's true because given the record here, given the facts, there is not a substantial likelihood that he would not have pled guilty even had he known of the Ruan standard. And that's true because there's circumstantial evidence throughout the record, abundant evidence, from which the defendant, evaluating his chances in terms of going to trial or accepting a plea, would have concluded that the plea was in his best interest because this was a easily established case of knowledge of acting wrongfully without authorization. I thought he said it said that he was trying to help Mr. Coyne with his addiction. If that's the case, why would an instruction that your subjective intention would be something we would have to deal with as opposed to the objective standard? Yes, your honor, yes, that's definitely addressed by the first phrase of the existing good faith instruction, which is that if the defendant acted in good faith that this was a legitimate medical purpose, right, in an honest way, an honest purpose, that that would be relevant for the jury to consider. But Ruan very clearly established that an unreasonable but subjective belief that one was acting for a legitimate purpose and within the usual course of medical practice wasn't enough because the court said that knowledge can be shown by circumstantial evidence, that the scope of authority remains tethered to objective criteria, and that the more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury will find that the government has carried its burden of proving knowledge. And so with that language, the Supreme Court, even though it's changing the scienter standard, has essentially telegraphed that the objective criteria are still very important. A subjective belief that one is acting lawfully and with a legitimate purpose isn't enough if the objective criteria say otherwise. And there's sort of a sliding analysis there. The more unreasonable that belief was measured against objective criteria, then the more likely it is that a jury would find that the defendant did in fact have knowledge. I mean, I see, I totally understand what your argument would have looked like in front of a jury. You know, this is so idiosyncratic and you're allowed to look at objective criteria and come on, no one really would have thought this. And, you know, maybe, who knows, probably likely to prevail, but that's not quite the question, right? Like he had a case to make to a jury in a way that sometimes, you know, like when it's did you know you were a felon or not and you spent 10 years in prison, you really, what are you going to tell a jury? But here, like this guy has a case to make, right? Yes, I knew he was using street drugs, but if I stopped prescribing this, he would just use them more. He's got both an addiction and a genuine pain problem. Like I'm doing the best I can here. It doesn't strike me as wholly out of the question that he might have wanted to take that to a jury. Well, yes, Your Honor, and I have two thoughts to offer in response to that. The first is that I think it's important to remember that the chance that he would have taken to a jury wouldn't be enough. Even a reasonable likelihood that he would have taken it to a jury wouldn't be enough. It has to be a substantial likelihood that he would not have pled guilty. And then the second thing I would like to offer is that there was significant evidence available at the time of the plea in the form of the expert opinion of Dr. Kennedy that this was far outside the normal course of medical practice. Well outside the normal course of practice, that's at SA 9, it was without rationale was another one of Dr. Kennedy's conclusions, and that he was not surprised that a fatal result was the outcome. Well, a jury could have rejected that evidence though, right? It could have, yes, but have we established a showing of a substantial likelihood that the petitioner would not have pled guilty? And another aspect of this that we'd have to take into consideration is the practical issues involved in the defendant's plea. Can I just ask you a question, and I'm embarrassed, I don't quite remember the procedural posture of this case. Was there ever a hearing on this? Is there a factual record about the circumstances under which he took the plea? Was he eager to take the plea? Was he wavering? Do we know any of that? Your Honor, this was a plea to an information. It's part of a negotiated plea agreement. There was a factual basis detailing the evidence in the case. He pled to six counts presented in an information in exchange for a waiver of his right to an indictment. Part of the plea agreement was that the government agreed to limit the attributable drug quantity for the defendant. That was a very important part of the agreement because the government was then limited in the guidelines range that the defendant would face. The amount that was attributed to the defendant by this negotiated agreement was only the amounts that were prescribed. On the six dates that Mr. Cohen also tested positive for street drugs, only those drug amounts were counted. That limited the defendant's sentencing exposure to a much lower range than it would have otherwise been. That has to be considered as part of the analysis of whether the defendant would have pled guilty. We have taken that chance of facing a much higher guidelines range because as properly applied as the PSR reflects following standard procedures of the guidelines attributable drug quantity, he was attributed with a much higher quantity that would have resulted in a much higher sentencing range. So by accepting this negotiated plea, he placed a cap on that range. That was very beneficial to him. The reasoning behind that is apparent in the sentencing record as well because when the judge said, hey, the PSR says that the attributable drug quantity is X. Why are both of you coming to me and saying that it's Y? In response to that, the defendant argued, well, because he should only be attributed, and we agreed that he should only be attributed the drug quantities that were distributed on the dates he tested positive. Even though the evidence showed that the defendant knew that the prescriptions were without medical purpose when he returned to prescribing oxycodone to Mr. Cohen after trying a period of suboxone because he knew that he was an addict. He found out he was an addict in August of 2014 because the victim admitted to him directly, and then there was a period of trying suboxone, trying to get him off those drugs, and then January of 2015, he returns to prescribing oxycodone with no legitimate medical purpose, and he does so for the next 18 months. That was a much broader course of conduct than simply the six acts of distribution that occurred in 2016 on the dates of the positive drug tests. Your Honor, I see my time has expired. If there are no further questions, the government submits. Thank you. Thank you. I guess I want to say he did have a lot to work with, after Rouhan, that is, if he were to go to trial. As to Dr. Kennedy, what Dr. Kennedy can testify to is that Dr. Kennedy's medical records didn't contain enough information for Dr. Kennedy to identify a legitimate medical purpose, and Dr. Kennedy can say that keeping appropriate medical records is necessary to stay within the usual course of professional practice, but he can't say that Petitioner didn't do tests. He can't say that Petitioner didn't do a physical examination. He can't say what actually occurred in that room. That's about as far as an expert can go in this case. In addition, there are some very good facts here for Petitioner. You know, he referred Mr. Cohen to a therapist. He referred him to, he tried to refer him to long-term pain treatment. He has gotten other people successfully off of being addicted to heroin and cocaine in his practice before. The government, at sentencing, admitted, this is not a pill mill. This, it's this specific guy that was charged, right, or the specific victim in this case was the only charges, and again, the government sentencing admitted that the majority of his practice was entirely legitimate, right? So, with that, when intent, and it is intent, it's not what he reasonably should have believed. Nothing in Rehoboam says has anything to do with reasonable. It's a straight-up, knowledge-intent argument. In terms of what he actually believed and what a jury would find, I think the fact that he had absolutely no motive to do anything wrong in this case might matter. Counsel, for all of that, though, you're not making an actual innocence argument. I am not. I think the standard is too hard to push. Okay. But, honestly, I think if this were a direct appeal and it were a plain error case, I would walk away with the win. The other thing I wanted to point out in terms of Rouhan really quickly, you know, counsel quoted the, you still rely on objective, you can still rely on objective facts to establish intent. Well, sure, that's true, right? Of course that's true. That's how you establish a person's mental state if they're not going to testify or confess. But the very next sentence the Supreme Court wrote after the paragraph she quoted is, but for the purpose of 841 as charged against medical practitioners, the government still must prove that the defendant knew or intended the prescription be unauthorized. That's very close to a direct quote, and I'm sure I quoted it in our brief. So this is, you know, I really think it is incredibly unlikely that if this particular doctor was told that the government has to prove that he believed at the time that he was writing these prescriptions that writing those prescriptions was wrong, that it was outside of his authorization, I think he would never have pled guilty. Well, maybe in the abstract, but in the context of the offer that was made to him, do we take that into account? I think it's fair to take it into account. I would say that there was a contest over the drug amount of sentencing between the government and the defense. The defense wanted just the six days, and the government wanted either after the meeting with the brother, everything after the meeting with the brother, or everything after the first drug test. I can't remember which one, but there was a disagreement, albeit in all honesty, not one that impacted the guidelines range. But there's never been an evidentiary hearing on this question, right? I feel like usually when this comes up, there's an evidentiary hearing, and the lawyer's like, oh no, he was dead set on pleading guilty, nothing would have changed that, or vice versa. Yes, he was on a knife's edge. The reason that it's weird is because I can't do an IAC here, right? I can't do an IAC here, so we have to do it without a factual record. We just have to imagine. I don't know if this is an appropriate consideration, but he is here asking for his conviction to be vacated, and he's on supervised release. I think clearly Rouhan is the thing that impacted that choice, right? So with that, unless there are any other questions. Thank you very much, Counsel. Thank you. We appreciate the arguments of both counsel. We'll come down and greet you and adjourn for the day. This Honorable Court stands adjourned until this afternoon. God save the United States and this Honorable Court.
judges: Albert Diaz, James Andrew Wynn, Pamela A. Harris